UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

XAVIER WATKINS,

        Plaintiff,

        v.                              Case No. 20-C-267

BARBARA KRAMER,

        Defendant.

---

## DECISION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Xavier Watkins, who is currently representing himself, filed this 42 U.S.C. § 1983 action while he was incarcerated at Waupun Correctional Institution, alleging that Defendant Barbara Kramer, a correctional officer, was deliberately indifferent to his serious medical needs. In particular, Plaintiff alleges that Defendant denied him clean bandages for a wound and ignored him when he bit his arm out of frustration. Defendant filed a motion for summary judgment on November 16, 2020. To date, Plaintiff has not responded to the motion for summary judgment, which alone is grounds to grant the motion. *See* Civil L.R. 7(d) (E.D. Wis.). For this reason, and also because it is clear on the record before the court that Defendant is entitled to judgment as a matter of law, Defendant's motion for summary judgment will be granted and the case will be dismissed.

### BACKGROUND

Because Plaintiff did not respond to the motion for summary judgment, Defendant's proposed findings of fact (Dkt. No. 43) are deemed admitted for the purposes of summary judgment. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the

nonmovant as mandated by the local rules results in an admission."); Civil L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment."). At all times relevant to this matter, Plaintiff was incarcerated at Waupun Correctional Institution.

At approximately 1:30 p.m. on November 26, 2019, Plaintiff held his trap and refused to close it unless he received a transcutaneous electric stimulation (TENS) unit. Plaintiff also threatened to harm himself if he did not receive the TENS unit and was on a hunger strike. Due to his threats of self-harm, Plaintiff was put onto clinical observation at approximately 2:00 p.m. At that time, Nurse Kacyon examined Plaintiff, and Plaintiff had no visible injuries. Nurse Kacyon examined Plaintiff again at 4:16 p.m. Plaintiff reported no injuries, and Nurse Kacyon observed no injuries. Plaintiff told Nurse Kacyon that he would "keep doing this until I get what I want!" Def.'s Proposed Findings of Fact ¶ 7. Nurse Kacyon examined Plaintiff again at 6:19 p.m. Plaintiff reported having bitten himself, and Nurse Kacyon observed a 0.5 centimeter abrasion to his left forearm, with some dried blood but no active bleeding. She cleansed his wound, but Plaintiff refused a dressing, ointment, or vital signs check. At 12:54 p.m. on November 27, 2019, Psychological Services Unit (PSU) staff evaluated Plaintiff about his superficial self-harm. Plaintiff explained that he bit himself because he was upset about not getting his TENS unit. At 9:13 a.m. on November 29, 2019, Plaintiff refused to permit Nurse Kacyon to examine his wound, weigh him, or check his vital signs.

At 8:15 a.m. on December 1, 2019, Plaintiff asked Defendant for new band-aids. Defendant explained to him that she would have to get them from the nurse, and she later explained that the nurse would be in at 9:00 a.m. Defendant did not have the ability to give Plaintiff new band-aids without getting them from the nurse. Defendant obtained bandages for Plaintiff as soon as the nurse arrived at approximately 9:00 a.m., immediately told Plaintiff she would give him the

2

bandages when he was done with his shower, and gave Plaintiff the new bandages at 9:20 a.m. Defendant never heard Plaintiff threaten to harm himself and never saw Plaintiff harm himself. If Plaintiff had harmed himself or threatened to do so, Defendant would have marked it in the observation log, notified the sergeant and/or supervisor, and remained at the cell to continue to observe him.

Plaintiff was given more replacement band-aids for his wound on December 2, 2019. At 12:50 p.m. on December 2, 2019, PSU staff evaluated Plaintiff. Plaintiff had a small wound on his left arm. He explained that he harmed himself to distract himself from other pain. At 8:36 a.m. on December 3, 2019, PSU staff evaluated Plaintiff. Plaintiff explained that he was striking to cope and to "make a point" to the Health Services Unit (HSU). *Id.* ¶ 18. PSU staff kept Plaintiff on observation because there was an ongoing threat of self-harm, and Plaintiff had not abandoned his agenda of gaining his desired medical treatment. At 11:22 a.m. later that day, Plaintiff complained to Nurse Ahlborg about his mattress but made no complaints about any bite injuries. At 12:09 p.m. on December 4, 2019, Nurse Ahlborg noted three 0.5 to 1 centimeter open areas on Plaintiff's left arm. At 4:14 p.m. the next day, Manlove noted self-inflicted bite wounds on Plaintiff's arm that were "healing nicely." *Id.* ¶ 21. At 9:07 a.m. on December 6, 2019, PSU staff evaluated Plaintiff. Plaintiff explained the reason he was in observation was because he was upset that HSU staff had given him the "run around." *Id.* ¶ 22. He was ready to get off of observation now that HSU staff had treated his pain to his satisfaction. At 11:06 a.m. the next day, PSU staff evaluated Plaintiff. He explained the reason he was in observation was because he was upset that a correctional officer had given him the "run around" about the TENS unit and that self-harming would distract from the pain. He had since received a cortisone shot.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Plaintiff asserts that Defendant was deliberately indifferent to his serious medical needs. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.

4

To prove a claim of deliberate indifference, the plaintiff must "establish that he suffered from an 'objectively serious medical condition' and that the 'defendant was deliberately indifferent to that condition.'" *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)).

As to Plaintiff's claim that Defendant failed to provide him with bandages, Plaintiff has not established that he suffered a serious medical need. "Not 'every ache or pain or medically recognized condition' constitutes a serious medical need." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 2008). "Failure to 'dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not . . . violate the Constitution.'" *Zentmyer v. Kendall Cty., Illinois*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)). Plaintiff has presented no evidence that the scratches to his arms were serious. In any event, Plaintiff has not shown that Defendant was deliberately indifferent to his medical needs.

Deliberate indifference requires more than negligence or even gross negligence; it requires that the defendant knew of, yet disregarded, an excessive risk to the plaintiff's health or safety. *Farmer*, 511 U.S. at 835, 837; *see also Estelle*, 429 U.S. at 104. It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). "A state officer is deliberately indifferent when he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted). After Plaintiff asked Defendant for bandages, Defendant explained that she would have to get them from the nurse. Defendant did not have the ability to provide band-aids without obtaining them from a nurse. Defendant obtained bandages shortly after the nurse arrived for her shift and gave them to Plaintiff

5

after his shower.  Plaintiff received bandages approximately one hour after his request.  Therefore, Defendant was not deliberately indifferent to Plaintiff's request for bandages.

Plaintiff also alleges that Defendant was deliberately indifferent by ignoring Plaintiff while he bit his arm out of frustration.  There is no evidence in the record that Plaintiff engaged in self-harm that caused a serious injury.  "[T]he risk to [an inmate's] life—a serious medical need—the defendant officers ignored by not immediately responding to his suicide threat . . . is not compensable without evidence of injury."  *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).  PSU staff noted that Plaintiff had a small wound on his arm the day after he requested bandages.  Plaintiff did not seek medical treatment for this small wound on his arm.  Absent a showing that Plaintiff experienced any cognizable harm, Plaintiff's claim fails as a matter of law.  *See id.* (noting that "trivial—indeed, almost nonexistent" "injuries consist[ing] only of minor scratches, quickly and easily treated with a gauze bandage" do not constitute a serious medical need).

In addition, there is no evidence that Defendant knew of and disregarded an excessive risk to Plaintiff's health or safety.  Plaintiff never told Defendant that he would harm himself if he did not immediately receive fresh bandages, and even if he did, prison officials cannot allow an inmate to manipulate them by threats of self-harm.  *See Bowers v. Pollard*, 602 F. Supp. 2d 977, 993 (E.D. Wis. 2009) ("Bowers insisted that the prison staff accede to his demands—a transfer, a change of cells, a longer period for writing, the return of property, etc.—or he would harm himself.  Obviously, prison officials cannot negotiate with an inmate concerning such matters and allow him that kind of power and control."), *aff'd*, 345 F. App'x 191 (7th Cir. 2009).  In any event, Defendant did not see Plaintiff harming himself and thus was not deliberately or otherwise indifferent to any threat to his health and safety.  Accordingly, Defendant is entitled to summary judgment on this claim.

6

## CONCLUSION

For these reasons, Defendant's motion for summary judgment (Dkt. No. 41) is **GRANTED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 12th day of January, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
